IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MINDY DENNING<br>5844 Georgetown Drive<br>Erie, PA 16509<br>　　　　Plaintiff,<br>　v.<br><br>UNIVERSITY OF PITTSBURGH<br>MEDICAL CENTER HAMOT<br>200 Lothrop Street<br>Pittsburgh, PA 15213<br>　　　　　and<br>UPMC HAMOT<br>600 Grant Street<br>Floor 56<br>Pittsburgh, PA 15219<br><br>　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>DOCKET NO.:   1:21-CV-145 |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**I.        INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Defendants of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), the Americans with Disabilities Act, as Amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1]  Plaintiff was unlawfully terminated by Defendants following

---

[1] Plaintiff will move to amend the instant Complaint to include violations of the Pennsylvania Human Relations Act after full administrative exhaustion before the Pennsylvania Human Relations Commission. Such claims will identically mirror Plaintiff's federal claims asserted herein under Title VII and the ADA -- and are mentioned *herein* for notice purposes only at this time.

complaints of sexual harassment and disability discrimination and she suffered damages more fully described/sought herein.

## II.  JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants a resident of the Western District of Pennsylvania.

## III.  PARTIES

1. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

2. Plaintiff is an adult individual, with an address as set forth in the caption.

3. Defendant University of Pittsburgh Medical Center Hamot is part of an integrated global nonprofit health enterprise, operating more than 40 hospitals and more than 700 clinical locations, including the Hamot campus (UPMC Hamot Surgery Center) where Plaintiff worked (located at 201 State Street, Erie, PA 16550).

4. Defendant UPMC HAMOT is the entity who issued Plaintiff's pay and tax records and is operating as a joint employer of Plaintiff with Defendant University of Pittsburgh Medical Center Hamot.

5. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### IV.     FACTUAL BACKGROUND

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is a female.

8. Plaintiff was hired by Defendants to work at its Hamot Surgery Center, located at 201 State Street, Erie, PA 16550 and worked there for approximately five (5) months.

9. Plaintiff was employed at all times as a Cook.

10. Plaintiff was supervised by 2 managers, Kyle and Durrell (spelled phonetically and last names unknown at this time).

11. In the timeframe of early December 2020, Plaintiff complained to Durrell that she was extremely offended by discrimination against special needs employees hired by Defendants.

12. In particular, a "Lead" (Shelly)(last name unknown) was screaming at them, calling them "retards," making fun of them, and stopped giving them breaks (unlike others not considered special needs).

13. These are only examples of the abuse and discrimination towards special needs employees Plaintiff witnessed.

3

14. Therefore, Plaintiff complained to Durrell that she herself was special needs growing up, has a disability (dyslexia), and was really upset about this type of mistreatment, finding it to be blatantly discriminatory.

15. Durrell *claimed* he would investigate (but Plaintiff was later informed <u>Durrell was the one</u> who said not to give breaks to special needs employees until they got their work done), and Plaintiff reiterated you cannot treat special needs employees different than anyone else.

16. More concerning, Durrell was very rude and antagonistic toward Plaintiff afterwards (and until she was terminated only weeks later as discussed *infra*).

17. Then, on or about December 18, 2020, Plaintiff complained to Durrell and Human Resources regarding a serious incident of sexual harassment which had occurred.

18. Another Cook, Jonathan (last name unknown), had always made females feel uncomfortable (including literally getting right into female employees' faces and talking extremely close (inappropriately so)).

19. But on or about Friday, December 18, 2020, between 6-7 AM when it was just Plaintiff and Johnathan present in the morning, he put his arm around Plaintiff and grabbed her breast; Plaintiff felt violated and embarrassed and objected to Jonathan's conduct.

20. Plaintiff tried to continue working though the shift (as they had meals that imminently needed to be prepared for patients).

21. However, later into the shift – Jonathan then grabbed her buttocks.

22. At that point, Plaintiff proceeded to complain to both Durrell and Human Resources that she had been physically assaulted and complained about what had happened (this complaint of sexual harassment occurred the same day it happened: Friday, December 18,

4

2020).

23. No efforts were made to ensure that Jonathan would not be working on the same shift, nor that someone was going to intervene to ensure this behavior did not occur again.

24. Plaintiff called out sick on Sunday December 20, 2020 -- because she was so upset emotionally that she would have to work around Jonathan (the person who sexually assaulted her).

25. Plaintiff was already scheduled off of work for Monday, December 21, 2020.

26. On or about Tuesday, December 22, 2020, Plaintiff came into work and Jonathan was still present (and no one had gotten back to Plaintiff about her extremely serious complaint of sexual assault).

27. On December 22, 2020, Kyle terminated Plaintiff claiming she missed a day from work on or about December 20, 2020 (necessitating her termination from employment).

28. Plaintiff explained to Kyle why she had to call out (not feeling safe working around Jonathan); Kyle responded, he knew all about her sexual harassment complaint and said HR will separately follow up with her about its investigation --- even though she was being terminated.

29. Other employees who missed days from work for being sick (for any reason) were not terminated (as this was a large facility with hourly employees who may call out sick from time to time as circumstances necessitated).

30. Further, Plaintiff had performed well during her tenure with Defendants and had no meaningful discipline on her record.

31. Human Resources still never followed up with Plaintiff about her complaints of sexual assault (notwithstanding Kyle's representations that an investigation had been

5

undertaken and Plaintiff would be contacted).

32. Defendants' conduct was outrageous and punitive, as Defendant terminated Plaintiff in extremely close proximity to her complaints and for blatantly false reasons.

### Count I
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
([1] Sexual Harassment; [2] Retaliation; and [3] Hostile Work Environment)

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. Plaintiff has properly exhausted her administrative remedies to proceed under Title VII herein by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter and/or notice of case closure.

35. Plaintiff was subjected to a hostile work environment based upon her sex and due to her complaints of sexual harassment, and Plaintiff was terminated from Defendants based upon her complaints of sexual harassment and for refusing sexual advances.

36. These actions as aforesaid constitute violations of Title VII.

### Count II
### Violations of the Americans with Disabilities Act, as amended ("ADA")
(Retaliation & Disability Discrimination (Record/Actual/Perceived))

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. Plaintiff has properly exhausted her administrative remedies to proceed under the ADA as well, as she timely filed a charge of discrimination Charge with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter and/or notice of case closure.

39. Plaintiff was terminated due to her reports of disability discrimination, which conduct constitutes unlawful retaliation under the ADA.

40. Plaintiff was terminated shortly after she notified her direct supervisor she had a disability, and was terminated for completely false reasons, thereby evincing an animus toward Plaintiff's status as a disabled individual.

41. These actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions;

D. Plaintiff is to be awarded punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate; and

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law.

                                    Respectfully submitted,

                                    **KARPF, KARPF & CERUTTI, P.C.**

By:    _/s/ Ari R. Karpf_____
                                    Ari R. Karpf, Esq.
                                    3331 Street Road
                                    Two Greenwood Square, Suite 128
                                    Bensalem, PA 19020

Date:  May 20, 2021